IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA C. MORGAN, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-18-536-C |
| ) | |
| MIDWEST REGIONAL MEDICAL ) | |
| CENTER, L.L.C., an Oklahoma ) | |
| limited liability company, d/b/a ) | |
| ALLIANCEHEALTH MIDWEST, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff was employed by Defendant as a registered nurse working in the behavioral health unit. She began her employment with Defendant on July 1, 2014, and at that time the behavioral health unit was located only on the second floor. In 2016 the unit was expanded to the fourth floor. It became commonly referred to the GERO floor. As part of the process of keeping adequate staffing levels, nurses would float between the second floor and the GERO floor. Floating is a process where nurses will move to an area other than where they are routinely assigned in an effort to accommodate a staffing shortage in the other area. As a nurse in the behavioral health unit, Plaintiff was expected to float when necessary.

In early 2016, Plaintiff and her immediate supervisor at the time, Judy Anderson, engaged in a dialogue regarding Plaintiff's ability to continue to float to the GERO floor. Plaintiff has been diagnosed with multiple sclerosis. As a result of the progression of that disease, Plaintiff has made certain adjustments in her expectations of her abilities in life,

including the type of work she does. In her conversation with Ms. Anderson, Plaintiff requested that she not be expected to float to the GERO floor, stating that as a result of her disability, working on that floor exacerbated her condition. Ms. Anderson agreed with Plaintiff's request and as a result Plaintiff was not asked to float to the GERO floor.

In November of 2016, Ms. Anderson left suddenly, and Ms. Harris was appointed to supervise Plaintiff and other nurses in her unit. In February of 2017, other nurses complained to Ms. Harris that Plaintiff was not floating to the GERO floor. As a result of the complaints, Ms. Harris and her assistant, Ms. Yu, called Plaintiff for a meeting. The parties are in dispute about the content of that meeting. However, it is undisputed that there was a discussion regarding the reasons for Plaintiff not floating, that there was an expectation from her supervisors that floating was necessary absent some exception and that Plaintiff ultimately elected to resign following the meeting.

Plaintiff then brought the present action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. §§ 1101, et seq. ("OADA"), for failing to accommodate her disability. Defendant filed a Motion for Summary Judgment, arguing the undisputed material facts entitle it to summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). [A] motion for summary judgment should be

2

granted only when the moving party has established the absence of any genuine issue as to a material fact. Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **ANALYSIS**

Initially, the Court notes the parties are in disagreement over the proper framework for analyzing Plaintiff's claims. Defendant argues that the analysis should proceed under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973). However, as Plaintiff notes, the Tenth Circuit has modified that analysis in a failure-to-accommodate claim. See Punt v. Kelly Servs., 862 F.3d 1040, 1050 (10th Cir. 2017). In a failure-to-accommodate case, "the employee must make an initial showing that '(1) she is disabled; (2) she is "otherwise qualified"; and (3) she requested a plausibly reasonable accommodation'" (quoting Sanchez v. Vilsack, 695 F.3d 1174, 1177 (2012)). Then if the employee produces evidence to make a prima facie case, the burden of production shifts to the employer to present evidence to either (1) conclusively rebut one or more elements of plaintiff's prima facie case or (2) to establish an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer. Smith v. Midland Brake, Inc., 180 F.3d 1154, 1179 (10th Cir. 1999). If the employer does either of the above, summary judgment is appropriate unless the employee can present evidence establishing a genuine dispute regarding the affirmative defenses or rehabilitates any challenged elements of her prima facie case. Id.

Here, there is no dispute as to the first two elements. Defendant has stipulated that Plaintiff is disabled under the ADA and OADA. Second it seems clear that she is otherwise qualified, as she was performing her duties satisfactorily up until the time of her resignation and, indeed, Defendant argues that there was no intent to discipline or otherwise modify the conditions of her employment at the time of the meeting. Thus, the question is whether Plaintiff requested a plausibly reasonable accommodation. It is on this point that the parties are in dispute. Defendant argues that at the meeting Ms. Harris asked Plaintiff why she was not floating, and Plaintiff offered her explanation of exacerbation of

her multiple sclerosis when working on the GERO floor. According to Defendant, Ms. Harris then stated that she would need a doctor's note and that in the absence of a doctor's note that Plaintiff would be required to float. Plaintiff's recollection of the meeting is drastically different. She asserts that Ms. Harris was adamant that she be required to float and that if she refused to float then she must resign. Plaintiff states that she offered to provide a doctor's note outlining the reasons why floating would exacerbate her condition and Ms. Harris refused, stating again that her only options were to either float or resign. Clearly, resolution of this dispute raises a question of fact which cannot be resolved at this stage. Indeed, a reasonable juror could find in favor of either party based on the evidence presented before the Court.

Defendant attempts to bolster its position, arguing that Plaintiff had prior experience with disciplinary proceedings and should have recognized that the meeting with Ms. Harris in February of 2017 was not a disciplinary hearing. While the evidence Defendant offers in support may well persuade the jury in its favor, it does not establish the absence of a dispute of material fact.

Defendant argues that Plaintiff never requested an accommodation in the meeting, even in light of Ms. Harris's suggestion that she obtain a doctor's note. As noted above, Plaintiff's recollection of the meeting is different, and she asserts that she offered to provide a doctor's note. Defendant suggests that even this was insufficient to have requested an accommodation. However, the Tenth Circuit has made clear that "[t]here is no requirement that an employee use 'magic words' like 'ADA' or 'reasonable

accommodation' when making a request, the employee must only make clear that 'the employee wants assistance for *his or her disability*.'" Mestas v. Town of Evansville, Wyo., ___ F. App'x ___, Case No. 17-8092, 2019 WL 4233198, *3 (10th Cir. Sept. 6, 2019) (quoting E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1049 (10th Cir. 2011)). At this stage, the Court must view the facts in the light most favorable to Plaintiff as the non-moving party. In that view, Plaintiff requested a plausibly reasonable accommodation which was denied. Thus, Plaintiff has established a prima facie case.

Before undertaking its burden of production to either rebut Plaintiff's prima facie case or establish an affirmative defense, Defendant argues Plaintiff cannot prevail as she cannot demonstrate an adverse employment action. On this point, Defendant argues that even if Plaintiff's version of the meeting is accepted, and there was an ultimatum given to her in that meeting, resignation was not her only option. Thus, Defendant asserts, Plaintiff was not constructively discharged. Constructive discharge occurs "'when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."'" Garrett v. Hewlett-Packard Co, 305 F.3d 1210, 1221 (10th Cir. 2002) (quoting Sanchez v. Denver Public Schs., 164 F.3d 527, 534 (10th Cir. 1998)). Indeed, the Tenth Circuit has noted, "[t]he bar is quite high in such cases: a plaintiff must show he had no other choice but to quit." Id.

Defendant suggests a number of options were available to Plaintiff other than resignation. However, each of the options outlined by Defendant are dependent upon an

acceptance of Defendant's position that a decision did not have to be made at that meeting. When viewed from Plaintiff's perspective, Ms. Harris had required a decision immediately in the meeting. Thus, the other alternatives offered by Defendant were not available to Plaintiff. The question of whether or not an employee was constructively discharged cannot be made solely from the viewpoint of the Plaintiff. See Ulrich v. K-Mart Corp., 858 F. Supp. 1087 (D. Kan. 1994), aff'd 70 F.3d 1282 (10th Cir. 1995). Rather, the test must be made from an objective viewpoint. Cockrell v. Boise Cascade Corp., 781 F.2d 173 (10th Cir. 1986), is instructive. There the Circuit noted that the Plaintiff had been given an ultimatum – to either go back to running a facility which he had stated he had no interest in running and which would have altered the conditions of his employment, or quit. The Tenth Circuit held that whether that ultimatum amounted to constructive discharge was a question for the jury. Id. at 178. Here, Plaintiff's testimony is that she was given an ultimatum to either return to floating on the GERO floor as needed or resign. Thus, the Court finds that a question of fact exists as to whether or not Plaintiff was constructively discharged. Certainly, a jury could determine that Plaintiff had other options other than quitting, but it may also accept Plaintiff's version of the facts and find that she had no option but to agree to float or resign before she left the meeting with Harris. Thus, Defendant's Motion will be denied on this point.

Defendant argues that Plaintiff's requested accommodation was not reasonable as floating was an essential aspect of her job. This argument is unsupportable on the evidence before the Court. For several months prior to Ms. Harris becoming her

supervisor, Plaintiff did not float. Additionally, Defendant has offered no job requirement or job duty assessment dictating that floating was an essential aspect of the job. While the evidence certainly supports that a majority of nurses floated and that having nurses available to float was an important prospect for smooth operation of the facility, there simply is no evidence demonstrating it was an essential aspect of Plaintiff's job, especially when measured against the fact that she did not float for a substantial period of time.

Finally, even if Defendant had rebutted some portion of Plaintiff's prima facie case, a jury could find that the language in Plaintiff's resignation letter was a request for accommodation and therefore a requirement that Defendant engage in the interactive process in an effort to keep Plaintiff employed. See Foster v. Mountain Coal Co., LLC, 830 F.3d 1178, 1188 (10th Cir. 2016), noting that a request for accommodation is adequate if it gives notice that the employee needs an accommodation. Thus, summary judgment is inappropriate.

## CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment of Defendant Alliancehealth Midwest (Dkt. No. 27) is DENIED.

IT IS SO ORDERED this 25th day of September, 2019.

ROBIN J. CAUTHRON
United States District Judge